UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In re: LYONDELL CHEMICAL COMPANY, et    :
al.,                                    :
                    Debtors,            :
----------------------------------------:
                                        :
EDWARD S. WEISFELNER,                   :
                    Plaintiff,          :
                                        :
           -v-                          :    11 Civ. 8251 (DLC)
                                        :
LEONARD BLAVATNIK, et al.,              :
                    Defendants.         :
                                        :
----------------------------------------X
EDWARD S. WEISFELNER,                   :
                    Plaintiff,          :
                                        :
           -v-                          :      11 Civ. 8445
                                        :
NAC INVESTMENTS LLC,                    :    OPINION & ORDER
                    Defendant.          :
                                        :
----------------------------------------X

APPEARANCES:

For plaintiff:
May Orenstein
Sigmund Samuel Wissner-Gross
Brown Rudnick LLP (NYC)
Seven Times Square
New York, NY 10036

For defendants Leonard Blavatnik, Access Industries Holdings
LLC, Access Industries, Inc., AI International, S.à.r.l., Nell
Limited, Lincoln Benet, Peter Thoren, Alex Blavatnik, Philip
Kassin, and BI S.à.r.l.:
Susheel Kirpalani
Alex J.B. Rossmiller
Rex Lee
Richard Irving Werder, Jr.
Quinn Emanuel Urquhart & Sullivan, LLP (NYC)
51 Madison Avenue

New York, NY 10010

For defendants the Legal Representative of the Estate of Richard
Floor (deceased) and Estate of Richard E. Floor:
James S. Dittmar
John Owen Farley
Michael Jones
Goodwin Procter, LLP (Boston)
53 State Street, Exchange Place
Boston, MA 02109

For defendants Lynn Coleman and John Fisher Gray:
John Owen Farley
Goodwin Procter, LLP (Boston)
53 State Street, Exchange Place
Boston, MA 02109

For defendant Deutsche Bank Securities, Inc.:
Jason L. Watkins
Bingham McCutchen LLP (Boston)
One Federal Street
Boston, MA 02110

For defendant Alan S. Bigman:

Adam James van Alstyne
James D. Wareham
DLA Piper US LLP (DC)
500 8th Street, N.W.,
Washington, DC 20004

Kurt Ernest Kates Ramlo
Skadden, Arps, Slate, Meagher & Flom, LLP (Los Angeles)
300 South Grand Avenue
34th Floor
Los Angeles, CA 90071

For defendant Stephen I. Chazen:
Joseph P. Moodhe
Erich O. Grosz
Debevoise & Plimpton, LLP (NYC)
919 Third Avenue, 31st Floor
New York, NY 10022

For defendant Perella Weinberg Partners LP:
Alex J.B. Rossmiller
Quinn Emanuel Urquhart & Sullivan, LLP (NYC)

51 Madison Avenue
New York, NY 10010

For defendants Dan F. Smith, Carol A. Anderson, Susan K. Carter,
Engen Engen, Paul S. Halata, Danny W. Huff, David J. Lesar,
David J.P. Meachin, William R. Spivey, T. Kevin DeNicola, Kerry
A. Galvin, John A. Hollinshead, James W. Bayer, W. Norman
Phillips, Kevin R. Cadenhead, Charles L. Hall, Rick Fontenot,
and Morris Gelb:
Eric D. Wade
John F. Higgins
Thomas III Woolley
Whitney V. Ables
Porter Hedges, L.L.P.
Reliant Energy Plaza
1000 Main Street
36th Floor
Houston, TX 77002

For defendant Daniel J. Murphy:
Eric D. Wade
John F. Higgins
Thomas III Woolley
Porter Hedges, L.L.P.
Reliant Energy Plaza
1000 Main Street
36th Floor
Houston, TX 77002

For defendant Edward J. Dineen:
Andrea Jacquelyn Gildea
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

For defendant Lyondell D&O Defendants:
John F. Higgins
Porter Hedges, L.L.P.
Reliant Energy Plaza
1000 Main Street
36th Floor
Houston, TX 77002

For defendant NAG Investments, LLC:
Susheel Kirpalani
Alexander Johannes Bittner Rossmiller

3

Rex Lee
Richard Irving Werder, Jr.
Quinn Emanuel Urquhart & Sullivan, LLP (NYC)
51 Madison Avenue
New York, NY 10010

DENISE COTE, District Judge:

Defendants in the above-captioned cases move for withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), Bankruptcy Rule 5011, and Stern v. Marshall, 131 S. Ct. 2594 (2011) ("Stern").[1]  For the reasons discussed below, the motions to withdraw the reference are denied.

BACKGROUND

Lyondell Chemical Company ("Lyondell") was North America's third largest independent, publicly-traded chemical company. Basell AF S.C.A. ("Basell") was a Luxembourg entity.  On December 20, 2007, Lyondell was acquired by and merged with Basell to create LyondellBasell Industries AF S.C.A. ("LBI"), the third largest chemical company in the world.  On January 6, 2009, Lyondell and certain affiliates filed for relief under

_____

[1] The movants are Carol A. Anderson, James Bayer, Kevin R. Cadenhead, Susan Carter, Stephen I. Chazen, C. Bart de Jong, T. Kevin DeNicola, Edward Dineen, Travis Engen, Rick Fontenot, Kerry A. Galvin, Morris Gelb, Paul S. Halata, Charles L. Hall, John A. Hollinshead, Danny W. Huff, David Lesar, David J.P. Meachin, Daniel Murphy, W. Norman Phillips, Jr., Dan F. Smith, William Spivey, Access Industries, Inc., Access Industries Holdings LLC, AI International, S.à.r.l., Nell Limited, BI S.à.r.l., Leonard Blavatnik, Lincoln Benet, Philip Kassin, Peter Thorén, Alex Blavatnik, NAG Investments LLC, Alan S. Bigman, and Diane Currier (Executor of the Estate of Richard Floor).

Chapter 11 of the Bankruptcy Code.  LBI filed for bankruptcy on April 24.

The Bankruptcy Court granted the Official Committee of Unsecured Creditors (the "Committee") standing to pursue claims arising out of the merger of Lyondell and Basell (the "Merger") on July 21, 2009.  This adversary proceeding commenced the following day, with a complaint filed on behalf of the Debtors' estates.

In light of the complexity of the litigation, the Bankruptcy Court divided the case into phases.  The first phase ("Phase 1") consisted of certain claims against financing party defendants ("FPDs") that needed to be tried prior to LBI's emergence from bankruptcy.  Trial in Phase 1 was to take place in early December 2009.

On December 4, 2009, shortly before the scheduled start of the trial, the Debtors advised the Bankruptcy Court of a proposed settlement by the Debtors and the FPDs.  Following a February 16, 2010 agreement among the parties on modifications to the settlement, the Bankruptcy Court approved a revised settlement on March 11, 2010 and confirmed a plan of reorganization (the "Plan") on April 23, 2010.  The Plan became effective on April 30, 2010, resulting in LBI's emergence from bankruptcy.

Pursuant to the Plan, the LB Litigation Trust was established in order to pursue estate claims that had not been settled or otherwise disposed of pursuant to the revised settlement of March 11, 2010 and the Plan.  Edward Weisfelner was appointed as Trustee of the Litigation Trust (the "Trustee") and was substituted as the plaintiff in the first of these actions.

The Trustee filed an amended complaint on July 23, 2010 against individuals and corporate entities involved in the merger of Lyondell and Basell and the subsequent collapse of LBI.  The amended complaint included twenty-one counts under the Bankruptcy Code, state law, Delaware law, and Luxembourg law containing the following claims:

- Count 1: A constructive fraudulent transfer claim under the bankruptcy code and state law against Nell Limited, AI Chemical, and Leonard Blavatnik;

- Count 2: An intentional fraudulent transfer claim under the bankruptcy code and state law against Nell Limited, AI Chemical, and Leonard Blavatnik;

- Count 3: A constructive fraudulent transfer claim under the bankruptcy code and state law against the Lyondell Directors[2] and the Lyondell Officers;[3]

---

[2] The eleven Lyondell Directors are Carol A. Anderson, Susan Carter, Stephen I. Chazen, Travis Engen, Paul S. Halata, Danny W. Huff, David Lesar, David J.P. Meachin, Daniel Murphy, Dan F. Smith, and William R. Spivey.
[3] The eight Lyondell Officers are James Bayer, Kevin DeNicola, Bart de Jong, Edward Dineen, Kerry Galvin, Morris Gelb, John Hollinshead, and Norm Phillips.

- Count 4: An intentional fraudulent transfer claim under the bankruptcy code and state law against the Lyondell Directors and the Lyondell Officers;

- Count 5: A breach of fiduciary duty claim under Delaware law against the Lyondell Directors;

- Count 6: A mismanagement claim under Luxembourg law against Leonard Blavatnik;

- Count 7: A tort claim under Luxembourg law against Len Blavatnik, Phil Kassin, the Estate of Richard Floor, and Alan Bigman;

- Count 8: A breach of fiduciary duty claim under Delaware law against the Lyondell Subsidiary Directors;[4]

- Count 9: An avoidable preference claim under the bankruptcy code and state law against Access Industries;

- Count 10: An equitable subordination claim under the bankruptcy code against AI International;

- Count 11: A fraudulent transfer claim under the bankruptcy code and state law against Nell Limited and Perella Weinberg;

- Count 12: A breach of contract claim under state law against Access Industries;

- Count 13: An illegal dividends and redemption claim under Delaware law against the Lyondell Directors;

- Count 14: An unlawful distribution and extra-contractual tort claim under Luxembourg law against Leonard Blavatnik, BI S.à.r.l., Alan Bigman, Alex Blavatnik, Peter Thoren, and the Estate of Richard Floor;

- Count 15: A claim for declaratory judgment for recharacterization of a revolving credit facility provided for the benefit of LBI under applicable federal or state

---

[4] The three Lyondell Subsidiary Directors are Kevin Cadenhead, Rick Fontenot, and Charles Hall.

law against Access Industries, Alan Bigman, Edward Dineen, and Morris Gelb;

- Count 16: An illegal dividends and redemption claim under Delaware law against Alan Bigman, Edward Dineen, and Morris Gelb;

- Count 17: A constructive fraudulent transfer claim under the bankruptcy code and state law against Access Industries;

- Count 18: An aiding and abetting breach of fiduciary duty claim under Luxembourg law against Nell Limited, Access Industries, Inc., AI International, and AI Chemical;

- Count 19: A fraudulent transfer claim under the bankruptcy code against BI S.à.r.l.;

- Count 20: A breach of fiduciary duty claim under Delaware law against Dan Smith, Kevin DeNicola, Edward Dineen, Kerry A. Galvin, and Norm Phillips; and

- Count 21: An aiding and abetting breach of fiduciary duty claim under Delaware law against Kevin DeNicola, Edward Dineen, Kerry A. Galvin, and Norm Phillips.

The gravamen of the amended complaint is that senior executives at Lyondell, Basell and other companies involved in the Merger exaggerated the earnings potential of the two companies for personal gain; as a result, LBI was severely under-capitalized after the Merger and was destined to fail in the face of a foreseeable industry downturn.

The Trustee brought a related action against NAG Investments LLW ("NAG") on June 16, 2011 to recover €100 million transferred by Basell less than two weeks before the Merger. The amended complaint in this related action (the "NAG Action")

brings a claim of fraudulent transfer pursuant to the Bankruptcy
Code against NAG, and is based on the same facts that gave rise
to certain claims in the initial action brought on July 23, 2010
(the "Main Action").

On September 24, 2010, the defendants filed thirteen
motions to dismiss under Fed. R. Civ. P. 12(b)(6) and forum non
conveniens grounds.  Five of these motions were resolved by the
parties.  On March 10, 2011, the Bankruptcy Court conducted
approximately eight hours of oral argument on the remaining
eight motions.  In August, the Honorable Robert E. Gerber stated
that "quite a bit of work has proceeded" in the course of
preparing to rule on the motions.

At the close of discovery in September, the parties filed
six motions for summary judgment involving issues that were not
dependent on the outcome of the pending motions to dismiss.
Briefing on the summary judgment motions closed in November.  On
November 15, defendants in the Main Action filed their motion to
withdraw the reference.  The motion to withdraw the reference in
the NAG Action followed shortly thereafter, on November 21.
Both motions became fully submitted on December 27.


                            DISCUSSION

Pursuant to the factors in Orion Pictures Corp. v. Showtime
Networks, Inc., 4 F.3d 1095, 1101 (2d Cir. 1993), as amended by

                                9

Stern, the motions to withdraw the reference are denied in order
to allow the bankruptcy court to issue opinions on the pending
motions.  This denial is without prejudice to any motions to
withdraw once the cases are ready for trial.

I.  Public Versus Private Rights

A brief history of the relevant case law, as well as the
relevant constitutional and statutory provisions, is necessary
to explain the denial of these motions.  Article III, Section I
of the United States Constitution provides as follows:

> The judicial power of the United States shall be
> vested in one Supreme Court, and in such inferior
> courts as the Congress may from time to time ordain
> and establish.  The judges, both of the supreme and
> inferior courts, shall hold their offices during good
> behaviour, and shall, at stated times, receive for
> their services, a compensation, which shall not be
> diminished during their continuance in office.

U.S. Const. art. III § 1.  Pursuant to this Article, Congress
may not "withdraw from judicial cognizance any matter which,
from its nature, is the subject of a suit at the common law, or
in equity, or admiralty."   Murray's Lessee v. Hoboken Land &
Improvement Co., 59 U.S. 272, 284 (1856).  There are also
matters involving public rights, however, "which may be
presented in such form that the judicial power is capable of
acting on them, and which are susceptible of judicial
determination, but which congress may or may not bring within

the cognizance of the courts of the United States, as it may deem proper."  Id.

In Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) ("Marathon"), the Court clarified the scope of this "public rights exception" in the context of adjudication by Article I bankruptcy courts.  A full majority of the Court did not reach consensus on the precise contours of the exception, but a majority concluded that it did not encompass the particular claim at issue -- a state law contract claim against an entity that was not otherwise part of the bankruptcy proceedings.  See id. at 89-91 (Rehnquist, J., concurring). Congress could not assign final adjudicative authority of such a claim to a bankruptcy judge "whose tenure and salary protection do not conform to the requirements of Art. III."  To do so would improperly permit a bankruptcy court to exercise "'[t]he judicial power of the United States' described by Art. III of the Constitution."  Id. at 89.

In response to the Marathon opinion, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act").  The 1984 Act permits district courts to refer all cases under title 11, all proceedings arising under title 11, and all cases arising in or related to a case under title 11 to bankruptcy judges.  28 U.S.C. § 157(a).  In this district, all

11

Chapter 11 cases are automatically referred to bankruptcy judges via a standing order.

The 1984 Act divides bankruptcy-related matters into "core" and "non-core" proceedings.  28 U.S.C. § 157(b)(1), (c)(1). Bankruptcy courts can hear both core proceedings and non-core proceedings that are "otherwise related" to a case under title 11.  They can enter final judgments only in core proceedings, however, unless the parties consent.  Id.  In non-core cases otherwise related to a case under title 11, bankruptcy courts are authorized to "submit proposed findings of fact and conclusions of law to the district court."  Id. at § 157(c)(1). The district court can enter final judgments in such cases only after reviewing de novo any matters to which a party timely and specifically objects.  Id.

The 1984 Act does not define "core proceedings."  Instead, it offers a non-exhaustive list of examples, including, inter alia, "counterclaims by the estate against persons filing claims against the estate," and "proceedings to determine, avoid, or recover fraudulent conveyances."  Id. at § 157(b)(2); see also Stern, 131 S.Ct. at 2605.

In Stern, the Supreme Court held that an Article I bankruptcy court lacked constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim, even though

12

the claim was properly designated as "core" under the 1984 Act.
See Stern, 131 S. Ct. at 2608, 2611.  In other words, the 1984
Act had granted bankruptcy courts final adjudicative authority
over a type of claim that fell outside the public rights
exception.  See id. at 2620.  At least in this "one isolated
respect," then, Congress had exceeded the limitations of Article
III.  Id.  The Court noted that the issue presented in the case
was "narrow," and that it would not "meaningfully change[] the
division of labor" between bankruptcy courts and district
courts.  Id.

II.  Withdrawal of the Reference

A party can move to withdraw the reference to the
Bankruptcy Court pursuant to 28 U.S.C. § 157(d) ("§ 157(d)"),
which states:

> The district court may withdraw, in whole or in part,
> any case or proceeding referred under this section, on
> its own motion or on timely motion of any party, for
> cause shown.  The district court shall, on timely
> motion of a party, so withdraw a proceeding if the
> court determines that resolution of the proceeding
> requires consideration of both title 11 and other laws
> of the United States regulating organizations or
> activities affecting interstate commerce.

28 U.S.C. § 157(d).  The defendants do not argue that
withdrawal is mandatory in this case, but rather that the
reference should be withdrawn "for cause" under the
permissive standard of § 157(d).

13

Section 157(d) does not define "cause."  Prior to
Stern, however, the Second Circuit had identified a number
of factors relevant to a determination of "cause" (the
"Orion factors"), including "whether the claim or
proceeding is core or non-core, whether it is legal or
equitable, and considerations of efficiency, prevention of
forum shopping, and uniformity in the administration of
bankruptcy law."  Orion, 4 F.3d at 1101; see also In re
Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996).  The
parties disagree on how much of this standard survives
Stern.

Under the pre-Stern standard, the "threshold" inquiry in
evaluating a request for permissive withdrawal was whether the
claim was core or non-core, because that issue determined both
"questions of efficiency and uniformity," and "the relevance of
parties' jury trial rights."  In re Orion, 4 F.3d at 1101.
Consistent with the intent of Congress, core jurisdiction was to
be construed "as broadly as possible subject to the
constitutional limits established in Marathon."  In re S.G.
Phillips Constructors, Inc., 45 F.3d 702, 705 (2d Cir. 1995).
The court further noted that "unnecessary costs could be avoided
by a single proceeding in the district court" in non-core
matters because a bankruptcy court's rulings on such matters are
subject to de novo review.  In re Orion, 4 F.3d at 1101.

14

Conversely, it could be more efficient to hear core matters in the bankruptcy court due to the bankruptcy court's familiarity with the issues.  Id.

After Stern, the core/non-core distinction may or may not remain relevant to a district court's withdrawal of the reference "for cause."  Compare Adelphia Recovery Trust v. FLP Group, Inc., et al., No. 11 Civ. 6847 (PAC), 2012 WL 264180, at *3 (S.D.N.Y. Jan. 30, 2012) (holding that after Stern, "a court's consideration of a motion to withdraw the reference to bankruptcy court should -- in addition to the Orion factors -- include consideration of" the bankruptcy court's final adjudicative authority) (emphasis supplied); In re Extended Stay, Inc., Nos. 11 Civ. 5394, 11 Civ. 5395, 11 Civ. 5396, 11 Civ. 5397, 11 Civ. 5864 (JMP), 2011 WL 5532258, at *8 (S.D.N.Y. Nov. 10, 2011) ("[T]he core/non-core distinction is still a relevant consideration in permissive withdrawal analysis, except to the extent Stern holds that Congress's classification of a claim as 'core' exceeds the boundaries of Article III.") with Dev. Specialists, Inc. v. Akin Gump v. Akin Strauss Hauer & Feld LLP, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[A]fter Stern, one can still apply the Orion factors but not looking at whether the matter can be classified as 'core' under 28 U.S.C. § 157, but rather at whether, under Stern, the Bankruptcy Court has the final power to adjudicate it." (emphasis supplied)).  Under

Stern, it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority. Thus, a district court evaluating a motion to withdraw must first determine whether or not the bankruptcy court has constitutional authority to enter final judgment on the claim, since it is on this issue that "questions of efficiency and uniformity" certainly turn, and "the relevance of parties' jury trial rights" may also turn.  Cf. In re Orion, 4 F.3d at 1101. To the extent the core/non-core distinction held a privileged position among the Orion factors before Stern, this is no longer the case.

III.   The Bankruptcy Court's Adjudicative Authority

The Bankruptcy Court lacks final adjudicative authority over all but a few of the claims in these actions.[5]  Stern held that the bankruptcy court lacked constitutional authority to enter final judgment on a state law counterclaim for at least three reasons:

1. The claim at issue did not fall within the public rights exception, Stern, 131 S.Ct. at 2614;

---

[5] The parties agree that counts 1-4, 9-11, 17, and 19 contain core claims and that the claims in counts 5-8, 13-14, 16, 18, and 20-21 are non-core.  The Trustee claims that the claims in count 15 are core, while the defendants claim they are non-core. In addition, the Access Parties concede that the bankruptcy court has final adjudicative authority over the equitable subordination claim against AI International in count 10, because this claim would necessarily be resolved in the claims allowance process.

2. The claim would not necessarily be resolved in ruling on a creditor's proof of claim, <u>id.</u> at 2608; and

3. The parties did not unanimously consent to final adjudication by a non-Article III tribunal, <u>id.</u> at 2618.[6]

<u>Stern</u> thus stands for the proposition that a bankruptcy court lacks final adjudicative authority over a core claim when each of these three conditions is met.  <u>See</u> <u>Adelphia</u>, 2012 WL 264180, at *3; <u>In re Extended Stay, Inc.</u>, 2011 WL 5532258, at *5; <u>Dev. Specialists</u>, 462 B.R. at 467.

Each of these three conditions is met for most of the core claims in these actions.  The defendants are therefore correct that Article III claims "predominate" in these proceedings. First, many of the core claims are for fraudulent conveyance and such claims do not fall within the public rights exception. Fraudulent conveyance actions by a bankruptcy trustee against a person who has not submitted a claim against a bankruptcy estate

> are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.

<u>Granfinanciera, S.A., et al. v. Nordberg</u>, 492 U.S. 33, 56 (1989).  The Supreme Court determined in <u>Granfinanciera</u> that

---

[6] Under Rule 7012(b), "[i]n non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties."  Fed. R. Bankr. P. 7012(b).  <u>Stern</u> suggests that consent may also provide a sufficient basis for final adjudication over core matters that do not fall within the public rights exception.  <u>See</u> <u>Stern</u>, 131 S.Ct. at 2614.

such actions therefore "appear matters of private rather than public right."  Id.

In Stern, the Supreme Court used this determination from Granfinanciera to support its holding on the scope of Article III.  It concluded that, "like the fraudulent conveyance claim at issue in Granfinanciera," a counterclaim for tortious interference that simply attempts to augment the bankruptcy estate "does not fall within any of the varied formulations of the public rights exception."  Stern, 131 S.Ct. at 2616.  Under both Stern and Granfinanciera, then, it is axiomatic that a fraudulent conveyance claim against a person who has not submitted a claim against a bankruptcy estate, brought solely to augment the bankruptcy estate, is a matter of private right. The Trustee brings such claims in counts 1-4, 11, 17, and 19 of the Main Action and in the NAG Action; these claims are therefore matters of private right.

Second, all or almost all of the Trustee's fraudulent conveyance claims will not necessarily be resolved in ruling on any defendant's proof of claim.  This is because only two defendants, Nell Limited and AI International, filed proofs of claim in the bankruptcy cases.  At most, then, only claims against these two defendants will be addressed in the claims resolution process.

Third, the defendants have not consented to adjudication of these proceedings by the bankruptcy court.  Pursuant to the bankruptcy code, as amended in August 1987, "express consent of the parties" is required for a bankruptcy court to enter final orders and judgments in non-core matters.  Fed. R. Bankr. P. 7012(b).  In a chart submitted to the bankruptcy judge on September 26, 2011, the defendants expressly stated that they did not consent to the entry of final orders by the bankruptcy court.  The Trustee offers no alternative instance when the defendants offered their express consent.

The Trustee contests each of these determinations.  He contends that a bankruptcy court can, in fact, enter final judgment on all the core fraudulent conveyance claims in light of the multiple bases on which Stern was decided, the Stern court's insistence that its holding was "narrow," the historical practice of bankruptcy courts, and other Supreme Court decisions.  The Trustee thus claims that these proceedings are "dominated by claims arising under the Bankruptcy Code," and that withdrawal is therefore inappropriate.  The Trustee cites to a number of decisions by bankruptcy courts in this district and elsewhere that have reached similar conclusions.  See, e.g., In re Refco, Inc., 461 B.R. 181, 184-94 (Bankr. S.D.N.Y., 2011); In re Safety Harbor Resort and Spa, 456 B.R. 703, 717-18 (Bankr.

M.D. Fla., Aug. 30, 2011); <u>Miller v. Greenwish Cap. (In re Am.</u>
<u>Bus. Fin. Servs.)</u>, 457 B.R. 314, 319-20 (Bankr. D. Del., 2011).[7]

The basic rationale for these decisions is that
<u>Granfinanciera</u> addresses fraudulent conveyance claims in a
Seventh Amendment context, not an Article III context, and the
comments in <u>Stern</u> comparing the claims in that case to those in
<u>Granfinanciera</u> are <u>dicta</u>.  Furthermore, the other express
rationales for the opinion in <u>Stern</u> may weigh against applying
the holding in <u>Granfinanciera</u> to an Article III context.  <u>See In</u>
<u>re Refco, Inc.</u>, 461 B.R. at 186-94.  Unlike the claim in <u>Stern</u>,
so the argument goes, fraudulent conveyance claims "flow from a
federal statutory scheme," <u>Thomas v. Union Carbide Agr. Products</u>
<u>Co.</u>, 473 U.S. 568, 584-585 (1985), and are "completely dependent
upon adjudication of a claim provided by federal law," <u>Commodity</u>
<u>Futures Trading Com'n v. Schor</u>, 478 U.S. 833, 856 (1986), and
the asserted authority to decide them is limited to a
"particularized area of law."  <u>Marathon</u>, 458 U.S. at 85; <u>see</u>

---

[7] The Court is unaware of any district court decisions in the
Southern District of New York that have embraced the Trustee's
reasoning on this issue.  Rather, the consensus among district
courts in this district appears to be that, post-<u>Stern</u>,
bankruptcy courts lack authority to enter final judgments in
fraudulent conveyance actions that will not necessarily be
decided in ruling on a proof of claim, absent the parties'
consent.  <u>See, e.g.</u>, <u>Adelphia Recovery Trust</u>, 2012 WL 264180, at
*5; <u>In re Coudert Bros. LLP</u>, App. Case No. 11-2785, 2011 WL
5593147, at *8-*12 (S.D.N.Y. Sept. 23, 2011); <u>Development</u>
<u>Specialists, Inc.</u>, 462 B.R. at 469.

also <u>Stern</u>, 131 S.Ct. at 2614-15 (Scalia, J., concurring); <u>In re Refco, Inc.</u>, 461 B.R. at 186-87.

This argument runs directly contrary to the clear language of <u>Stern</u>.  Specifically, <u>Stern</u> provides that "[the debtor's] counterclaim -- <u>like the fraudulent conveyance claim at issue in Granfinanciera</u> -- does not fall within any of the varied formulations of the public rights exceptions in this Court's cases."  <u>Stern</u>, 131 S.Ct. at 2614 (emphasis supplied).  The Court then lists each of these public rights exceptions and explains why the counterclaim at issue in <u>Stern</u> -- and by implication, the fraudulent conveyance claim in <u>Granfinanciera</u> -- does not fit within any of them.  <u>Id.</u> at 2614-15.

The <u>Stern</u> Court compares the <u>claim</u> at issue in <u>Stern</u> to that in <u>Granfinanciera</u>.  It makes no mention of the differing legal contexts.  <u>Stern</u> thus leaves no room for a fraudulent conveyance claim that is somehow a matter of private right in a Seventh Amendment context, but a matter of public right in an Article III context.  Simply put, fraudulent conveyance claims in <u>Stern</u> and <u>Granfinanciera</u> are matters of either public or private right; they cannot be both.

The Trustee argues that a number of his claims will necessarily be resolved in ruling on a creditor's proof of claim.  Specifically, he contends that the fraudulent conveyance claims against Nell Limited and the equitable subordination

claim against AI International are integrally related to these parties' proofs of claim, and are central to the actions as a whole.  The defendants contest these assertions.  Even if the Trustee is correct, however, a substantial majority of the fraudulent conveyance claims have been brought against third-party defendants who, like the petitioners in Granfinanciera, have not filed claims against the estate.  See Granfinanciera, 492 U.S. at 58.  It is therefore not necessary to decide this issue in order to conclude, as the defendants claim, that Article III claims "predominate" in these actions.

The Trustee contends that the defendants consented to final adjudication by a bankruptcy court implicitly through, among other things, participating in proceedings before the bankruptcy court without objection since July 2010.  The Trustee also notes that the bankruptcy court's final, non-appealable order confirming the Plan contains language specifically authorizing the bankruptcy court to "hear and determine" the claims in these proceedings.  He contends that this language forecloses the defendants from contesting the bankruptcy court's authority to hear and determine these claims.

Under Fed. R. Bankr. P. 7012(b), which requires "express consent of the parties" for a bankruptcy court to enter final orders and judgments in non-core matters, mere implied consent appears to be insufficient.  Fed R. Bankr. P. 7012(b).

22

Regardless, "a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge." Men's Sportswear, Inc. v. Sasson Jeans (In re Men's Sportswear, Inc.), 834 F.2d 1134, 1138 (2d Cir. 1987).  There is no implied consent where, as here, defendants seek withdrawal at the close of discovery before any trial activities or judgment, and where new precedent renders unclear the authority of the bankruptcy to enter final judgment on certain claims.  The Trustee cites to no authority indicating otherwise.  Cf. In re Coudert, 462 B.R. at 471-72 (finding a lack of consent to final adjudication before the bankruptcy court because "a waiver of important rights should only be found where it is fully knowing").

The Trustee's argument that the order confirming the Plan contains language authorizing the bankruptcy court to "hear and determine" these claims is similarly unavailing.  This order confirmed the bankruptcy court's subject matter jurisdiction; it did not address the bankruptcy court's authority to enter final judgments under Article I.  Jurisdiction retention language from a Plan, by itself, does not confer upon a bankruptcy court authority to enter final orders.  Cf. Stern, 131 S.Ct. at 2607 (noting that the allocation of authority to enter final judgment between the bankruptcy court and the district court "does not implicate questions of subject matter jurisdiction"); In re 610

23

<u>W. 142 Owners Corp.</u>, 219 B.R. 363, 373 (Bankr. S.D.N.Y. 1988) ("A provision of the Plan by itself cannot confer core jurisdiction over [a defendant].").

For the above reasons, the bankruptcy court lacks final adjudicative authority over the Trustee's core fraudulent conveyance claims against all parties except Nell Limited, at a minimum.  It is left to the bankruptcy court to determine, in the first instance, its adjudicative authority with respect to the other claims.[8]

IV.  Additional <u>Orion</u> Factors

The bankruptcy court's authority to enter final judgment on claims is not determinative in deciding whether to withdraw the reference, however.  <u>Orion</u> also requires an investigation into whether this matter is legal or equitable and considerations of "efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  <u>Orion</u>, 4 F.3d at 1101.  In this case, these other factors are decisive.

---

[8] Section 157 directs bankruptcy judges to determine "whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." This provision permits the bankruptcy court to determine its own adjudicative authority pursuant to the core/non-core distinction in the bankruptcy code.  Because <u>Stern</u> was not intended to "meaningfully change[] the division of labor" between bankruptcy courts and district courts, the bankruptcy court also has authority to determine its adjudicative authority pursuant to <u>Stern</u> and Article III, subject to review by this Court.

A. Efficiency

Withdrawal is not appropriate here because it would result in significant inefficiencies. This Court will benefit from exposure to the bankruptcy court's knowledge and expertise when it rules on the outstanding motions. The bankruptcy court has performed the yeoman's work of preparing these matters for trial. It has presided over the bankruptcy case underlying these proceedings since January 2009. It reviewed the evidence developed in Phase 1 in order to approve the settlement agreement in March 2010 and confirm the Plan in April 2010. It presided over pretrial proceedings in these matters from July 2010 until the defendants filed their motions to withdraw the reference. It oversaw discovery and motion practice, and began work on six motions to dismiss. This Court, on the other hand, was only made aware of these proceedings in November 2011, and has not performed any work on the outstanding motions, presided over any pretrial proceedings, or overseen any discovery or motion practice. The bankruptcy court is well positioned to issue proposed findings of fact and conclusions of law or final orders or judgments on the outstanding motions, as appropriate.

The defendants make three primary arguments in support of their contention that withdrawal will increase efficiency. First, they claim that withdrawal is appropriate because the bankruptcy court may not enter final judgment on fraudulent

conveyance claims and withdrawal would therefore eliminate unnecessary layers of litigation.  Second, they contend that withdrawal is appropriate because it is unclear whether, under the bankruptcy code, the bankruptcy court can enter proposed findings of fact and conclusions of law on core Article III claims.  Third, they argue in the alternative that de novo review of such claims is unnecessary and will create unnecessary layers of litigation.  Each of these arguments is misguided.

For the reasons discussed above, the defendants are correct that the bankruptcy court may not enter final judgment on most of the fraudulent conveyance claims, on any non-core claims, and possibly on other claims as well.  But they are mistaken that the layers of litigation that this may create are unnecessary or inefficient.  Given the extensive experience the bankruptcy court has acquired in this matter, permitting it to rule on the pending motions and to conduct pre-trial proceedings will be of assistance to this Court and to the parties.

The defendants are wrong that there is uncertainty whether the Bankruptcy Court can enter proposed findings of fact and conclusions of law on fraudulent conveyance claims.  It is clear that Bankruptcy Court can enter such orders.  The defendants point out that 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033 permit a bankruptcy court to make proposed findings of fact and conclusions of law on claims that are designated "non-core," but

there is no corresponding provision that authorizes a bankruptcy court to enter proposed findings or conclusions in core proceedings over which the bankruptcy court lacks authority to enter final judgments.  The defendants claim that there is thus a statutory "gap" with respect to claims implicated by the holding in <u>Stern</u>, and the bankruptcy court may lack authority to propose findings of fact and conclusions of law on such claims.

The defendants are mistaken.  The Supreme Court was explicit that the question presented in <u>Stern</u> was "narrow," and that the case would not "meaningfully change[] the division of labor" between bankruptcy courts and district courts.  <u>Stern</u>, 131 S.Ct. at 2620.  Disallowing bankruptcy courts from issuing findings of fact and conclusions of law on core Article III claims would <u>significantly</u> change the division of labor between bankruptcy courts and district courts.  As evidence, one need look no farther than the large number of motions to withdraw the reference that have been brought before this court in the wake of <u>Stern</u>, many of which advance statutory "gap" arguments similar to those advanced here.  <u>See, e.g.</u>, <u>Adelphia</u>, 2012 WL 264180, at *5-7; <u>In re Coudert</u>, 2011 WL 5593147, at *13; <u>In re Extended Stay</u>, 2011 WL 5532258, at *8.

When Congress enacted the 1984 Act, it delegated bankruptcy courts greater authority over core claims than non-core claims.  Post-<u>Stern</u>, this statutory structure should be upheld as much as

possible.  Cf. Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1978) ("A court should refrain from invalidating more of the statute than is necessary." (citation omitted)).  Granting bankruptcy courts less authority over core Article III claims than non-core claims, as defendants urge, would not accomplish this goal.

Moreover, Congress clearly did not anticipate the holding in Stern when it enacted the 1984 Act.  Rather, as indicated in the conference report to the 1984 Act, Congress intended for core proceedings to consist of all those "matters over which the bankruptcy court can exercise summary jurisdiction," and to exclude those "state-based causes of action" that bankruptcy courts cannot finally adjudicate under Article III.  130 Cong. Rec. S 8891 (daily ed. June 29, 1984), reprinted in 1984 U.S. Code Cong. & Admin. News 601.  By granting bankruptcy courts authority to issue recommended findings in all non-core matters related to a bankruptcy proceeding, Congress intended such authority to reach all bankruptcy-related claims that bankruptcy courts cannot finally adjudicate under Article III.  The fact that Congress failed in its constitutional line-drawing does not require invalidation of this broader statutory purpose.  See United States v. Booker, 543 U.S. 220, 246 (2005) (citation omitted) (holding that when a portion of a statute is ruled unconstitutional, courts should "seek to determine what Congress

would have intended in light of the Court's constitutional holding"). Thus, pursuant to this district's Amended Standing Order of Reference, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court in all those core matters that it cannot finally determine. See Amended Standing Order of Reference, Case No. 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

The defendants are similarly mistaken that de novo review is impractical and will create unnecessary layers of litigation in this case. The defendants argue that any findings of fact by a trial court will be highly dependent on the credibility of witnesses, and that it would be inappropriate for this Court to conduct de novo review of a "cold record" when the issues in the case are so dependent on live testimony. This argument is unpersuasive at this stage in the litigation, when there are pending motions and the case is not yet trial ready. This Court has no intention of allowing these matters to proceed to trial, over defendants' objections, before a court that lacks authority to enter final orders. Defendants are free to raise their witness credibility arguments again upon a renewed motion to withdraw once the pending motions have been decided and the case is ready for trial.

B.   Jury rights, forum shopping, and uniformity of
bankruptcy administration

None of the other <u>Orion</u> factors weigh in favor of
withdrawing the reference at this time.  The defendants have a
right to a jury trial, but they have not yet asserted this right
and the case is not yet trial-ready.  The Seventh Amendment
conveys a guarantee of a jury trial to a party litigating a
fraudulent conveyance action when the party has not filed a
claim against the bankruptcy estate and the action is not
integral to the restructuring of debtor-creditor relations.
<u>Granfinanciera</u>, 492 U.S. at 58-59.  If and when the defendants
assert their jury trial rights and/or the case proceeds to
trial, then, the defendants are free to move for withdrawal a
second time.

It is unclear whether the defendants are engaged in forum
shopping or simply believe that withdrawal of the reference will
reduce the time and expense of litigation.  The Trustee claims
that the bankruptcy court has issued discovery rulings adverse
to the defendants, and claims that these rulings provided the
defendants with a motive to engage in forum shopping; the
defendants note that the bankruptcy court has yet to rule on any
motions and argue that there is therefore no motive for forum
shopping.

Similarly, it is unclear the extent to which withdrawal will have a negative impact on the uniformity of bankruptcy administration.  The Trustee points to a number of allegedly novel issues of bankruptcy law implicated by these matters and argues that it would be useful to have the bankruptcy court's opinion on these issues in the first instance; the defendants note that the matters of central importance in this dispute revolve around non-core claims or core Article III claims, and that the plan of reorganization was confirmed more than a year and a half ago.  The defendants further note that because there is no longer an estate to administer, any concerns of uniformity of bankruptcy administration are de minimus.

It is not necessary to resolve the parties' differences on these issues at this time.  Regardless of the defendants' true motivations for moving to withdraw or the impact of withdrawal on the uniformity of bankruptcy administration, withdrawal at this stage would result in significant inefficiencies and is inappropriate.


CONCLUSION

The November 15 and November 21 motions to withdraw the reference in the above-captioned cases are denied

31

without prejudice to any renewed motions to withdraw when
the case is ready for trial.


        SO ORDERED

Dated:    New York, New York
          March 29, 2012


                              _____
                                   DENISE COTE
                              United States District Judge

without prejudice to any renewed motions to withdraw when

the case is ready for trial.


      SO ORDERED

Dated:    New York, New York
           March 29, 2012

                                              DENISE COTE
                    United States District Judge